IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RUSSELL SMITH, #219814         *
    Plaintiff,
  v.                           *     CIVIL ACTION NO. PJM-09-1061

CAPTAIN KRISTEN TYLER, et al.  *
    Defendants.
                           ***

## MEMORANDUM OPINION

I. Procedural History

    Russell Smith ("Smith") originally filed a "Memorandum of Law" seeking a Temporary Restraining Order against four Eastern Correctional Institution ("ECI") officers for alleged legal mail tampering (opening legal mail). Smith claims that on two separate occasions in March of 2009, his legal mail was received in envelopes bearing masking tape. He accuses ECI staff of opening and reading the mail outside his presence. Smith further claims that when he complained about legal mail handling and asked for a "matter of record" to be written, he was placed in isolation where he was deprived of all property and hygiene products, including toilet paper, for sixteen hours. He further asserts that while housed on administrative segregation he was denied access to legal research materials. ECF No. 1.

    The "Memorandum" and underlying 42 U.S.C. § 1983 Complaint represented Smith's attempt to supplement the allegations in his civil rights medical case in *Smith v. Mathis*, *et al.,* Civil Action No. PJM-08-3302 (D. Md.) The document, however, was opened as the instant case and the Office of the Attorney General ("OAG") was directed to file a show cause response.

After issuance of the show cause order but before the filing of the OAG response[1] Smith filed two supplemental Complaints, which added party Defendants, raised additional claims against the original Defendants, and sought unspecified damages.[2]  ECF Nos. 4 & 5.  The Court permitted Smith to supplement his action, but directed him to respond to the show cause response.

On July 9, 2009, Smith filed a reply to the show cause response along with an Amended Complaint.  ECF Nos. 10 & 11.  The amendment reiterates the existing claims and augments the allegations regarding: the conditions of Smith's sixteen-hour isolation cell assignment, the false rationale proffered for his assignment to administrative segregation,[3] and the nature and background of the litigation surrounding the alleged tampered-with legal mail.[4]  ECF No. 10.  Additional Amended Complaints added several Defendants, including the Director and Administrative Officer of the Inmate Grievance Office ("IGO"), the Commissioner of the Division of Correction ("DOC"), and the ECI Litigation Coordinator, with Smith claiming that these individuals conspired to deny him due process, access to the courts, and equal protection of the law.  ECF Nos. 17 & 19.  The

---

[1] The OAG response indicated that Smith's remedies regarding mail tampering were dismissed upon an investigatory finding that the incoming legal mail had been sealed with tape by the sender and had not been opened before Smith received them.  ECF No. 6.  The response also indicated that Smith had been placed on administrative segregation on March 24, 2009, pending an investigation into informant information that Smith had received contraband in his legal mail.  *Id*.  After conducting a cell search and interviewing the informant, the investigator determined that the accusation was false.  Smith was returned to general population on April 9, 2009.  The response argued that Smith was permitted to maintain property and access to legal materials as outlined in applicable Division of Correction Directives.  *Id.*

[2] The supplemental Complaints were accompanied by copies of Smith's administrative remedy appeal materials regarding his claims of isolation confinement and mail tampering.  ECF Nos. 4 & 5 at Attachments.

[3] Smith seemingly claims that staff at ECI have made false statements, falsified documents, and have taken other illegal action.  ECF No. 35; *see also* ECF No. 47 at Attachment 3.  He contends that he has written various state, local, and federal agencies regarding this unconstitutional and criminal behavior.  *Id*.

Amended Complaints all sought to invoke this Court's pendant jurisdiction under 28 U.S.C. § 1367.

When the dust settled, on February 19, 2010, the Court denied Smith's Motion for Temporary Restraining Order, permitted him leave to amend his Complaint, and ordered Defendants to answer the allegations set out Smith's original, supplemental, and amended aureations.

II. Dispositive Filings

Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 41. Smith has filed a Rebuttal and also seeks a hearing on summary judgment.[5] ECF Nos. 43, 44, & 45. No hearing is deemed necessary and the case may be determined on the papers and exhibits before the court. *See* Local Rule 105.6. (D. Md. 2010).

III. Standard of Review

Under the December 10, 2010 revisions to Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"The party opposing a properly supported motion for summary judgment 'may not rest upon

---

[4] Supplemental "Disclosures" filed by Smith relate to further administrative remedy appeal materials. ECF Nos. 12 & 15.

[5] Smith has also filed a "Motion to Supplementation of Disclosures." ECF No. 47. He requests permission to further supplement his Complaint, complaining that the ECI library has been repeated closed several days a month during 2009 and 2010 and he is being denied access to the courts because he cannot conduct legal research in ongoing litigation. Leave to supplement shall be denied. Smith is free to file a new civil rights case raising such claims. The Court observes, however, that various dispositive and non-dispositive papers filed by Smith in this case seemingly belie Smith's access-to-courts claims. Further, the ongoing litigation cited to by Smith, involving the law firm of Kramon & Graham, P.A., arguable pertains to *Smith v. Mathias*, Civil Action No. PJM-08-3302 (D. Md.) Smith is proceeding in that case with appointed counsel.

the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to….the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

IV. Discussion

   Facts

Smith's claims, pared down to their essentials, are that Defendants opened legal mail from the OAG and Kramon & Graham, P.A. during the third week of March 2009. He bases this conclusion on the fact that the mail flaps on both letters were sealed with masking tape. He further alleges that when he complained about the incoming mail, an officer opened it and read the contents in front of him. Smith then claims that when he further requested a matter of record from officers, he was retaliated against by being placed on administrative segregation and isolation on trumped up "contraband" allegations which were eventually found to be without merit. Smith complains that the conditions of his sixteen hours on isolation were unconstitutional because he was not provided

4

his property, hygiene items, and toilet paper and was subject to lighting the entire time. Finally, he alleges that his time on administrative segregation from March 24 to April 7, 2009, denied him access to the courts because he could not obtain legal research materials needed to litigate a state court case and his pending federal court case in *Smith v. Mathis*, *et al.,* Civil Action No. PJM-08-3302 (D. Md.)

Defendants claim that Smith filed administrative remedies ("ARP) complaining that his mail had been tampered with and opened outside of his presence. ECF No. 41, Ex. A at Miller Decl. The ARPs were investigated and, due to lack of evidence, dismissed. In both instances it was determined that the incoming mail had been sealed with the tape and had not been opened before Smith received the mail. Specifically Defendants note that on March 20, 2009, after learning that Smith was complaining that his legal mail had been opened, Lt. Clayton reported to the classifications area where Correctional Officer Stacey was issuing the legal mail. Clayton inspected the letter in question from the OAG in Smith's presence and found that it was sealed with pieces of clear tape. Clayton asked Stacey if she had opened the mail and she indicated that she had not done so. Smith accepted the mail. It appears that on March 24, 2009, Clayton again encountered Smith who expressed his belief that because there was tape on his legal mail it had to have been opened outside of his presence. Upon removal of the tape, the glue was found to be intact. Clayton inspected the contents of the envelope and returned all to Smith, who agreed to accept his mail. It was noted that the mailroom at ECI occasionally receives legal mail with Scotch Tape on the back flaps of envelopes. *Id*.

Defendants state that Smith was placed on administrative segregation on March 24, 2009, pending an investigation that he received contraband in his legal mail. After interviewing the informant and Smith, and searching Smith's cell, the investigator determined that the accusation was

5

false. It was recommended that Smith be released from administrative segregation and he was returned to general population on April 9, 2009.

Defendants maintain that while housed on administrative segregation Smith received treatment and privileges consistent with institutional directives. He was allowed to have property as outlined in the applicable "Matrix," including rolls of toilet paper. Smith was also permitted access to legal materials as provided by DOC and institutional policy. ECF No. 41, Ex. A.

Defendants acknowledge that Smith was placed temporarily in the ECI Administrative Segregation Observation Area ("ASOA") on March 24, 2009 at 11:50 p.m. and released from the area on March 25, 2009 at 12:40 p.m. for placement in Housing Unit #5 administrative segregation. *Id*., Ex. 1, Maycock Decl. Major Maycock affirms that it was likely that Smith was placed in the ASOA until appropriate housing could be found for him in that housing unit. Maycock states that each cell in the ASOA is supplied with toilet paper and when inmates are give showers they are provided soap and towels. He additionally claims that security personnel in the ASOA make rounds every half hour, checking on the inmates' health and activities. Maycock contends that inmates in the ASOA may request soap, toothbrush, toothpaste, and toilet paper at any time and the item will be provided if appropriate. *Id*.

Defendants also provide the following information with regard to Smith's medical care and relevant state and federal litigation during the March to April 2009 period in question. They argue that there are no medical records pertaining to Smith for the months of March and April 2009. *Id*., Ex. 2. In addition, they state that at the time Smith was on administrative segregation he did have a case pending before the Circuit Court for Somerset County, *In the Matter of Russell Smith*, Case No. 19-C-08-012624. ECF No. 41, Ex. 3. They assert, however, that Smith was granted an extension of time by the trial court to file a response to Memorandum and Smith did so on April 22,

2009, well before the Circuit Court hearing before Judge Daniel M. Long on May 28, 2009. At the hearing Smith's motion was denied and the matter was remanded to the IGO for consideration of the exhaustion issue. Defendants further note that Smith's federal court case, *Smith v. Mathis*, Civil Action No. PJM-08-3302, is proceeding with appointed counsel.

Analysis

The Court has examined the numerous documents filed by Smith and the briefing filed by all parties. For reasons to follow, the undersigned finds no constitutional violations.[6]

Inmates are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *see also Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). The Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable, but only when the inmate is able to demonstrate actual injury from such deprivation. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). According to the *Lewis* opinion, the Constitution does not guarantee inmates the ability to litigate every imaginable claim they can perceive, only that they be given the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 355.

Smith's access-to-courts claims are relatively uncomplicated and straightforward: he

---

[6] Preliminarily, the Court makes the following observations. Smith's claims against Defendants Oakley and Adegbesan are conclusory in nature as he does not factually lay out how they acted to violate his constitutional rights. The Complaint against them is therefore subject to dismissal. Alternatively, insofar as Smith takes issue with Oakley and Adegbesan's rulings on his IGO grievances and appeals, he has failed to set out a colorable claim under § 1983. The allegations boil down to disagreements with state executive agency decisions regarding Smith's remedy appeals. This does not comprise a violation of the Fourteenth Amendment, no matter how grandiloquently styled by Smith. Further, it is arguable that Oakley and Adegbesan are entitled to quasi-judicial immunity for rulings rendered in Smith's grievances and appeals. *See Burt v. Mitchell*, 589 F.Supp. 186, 191-192 (E. D. Va. 1984) (warden and regional administrator who denied inmate's grievance are entitled to absolute immunity).

contends that Defendants twice, within the span of four days in March of 2009, opened his legal mail outside his presence. He reaches this conclusion by noting that when he received the mail, masking tape was applied to the flaps on each envelope. Given Lt. Clayton's statements, there is a dispute of fact involving these incidents. The Court does not, however, find the dispute material in nature. Smith points to no other specific incidents of improper mail opening.[7] Therefore, even were his conclusory allegation to be true, the Court finds no access-to-courts violation. While not to be condoned, isolated instances or occasional opening of inmate legal mail outside of the inmate's presence does not violate the Constitution.[8]

The remaining component of Smith's access-to-court claim involves his allegation that while on ASOA/administrative segregation for some fifteen days, from March 24 to April 9, 2009, he did not have access to legal research materials, thus impeding his ability to litigate a case before the state circuit court and an action in this Court. The undersigned finds that Smith has failed to demonstrate that he experienced an actual injury or prejudice to his ability to proceed with a particular protected

---

[7] Although he has filed countless papers in this Court, Smith now states in his Rebuttal Declaration that he received mail sealed with tape and opened outside his presence from the OAG, the State's Attorney's Office, Department of Justice, Federal District Court, Maryland Court of Appeals, Kramon & Graham, P.A., pro bono counsel, a Congressional Representative, and the IGO. ECF No. 43 at Smith Decl. As he provides no particularized facts in support of this eleventh hour claim, the Court shall not require further briefing on the matter. In addition, a declaration from fellow inmate John Gray-Bey accompanies the Rubuttal. Gray-Bey attests to mail returns, delays in delivery, and tampering at ECI involving his letters. *Id.*, at Gray-Bey Declaration.

[8] *See Buie v. Jones*, 717 F.2d. 925, 926 (4th Cir. 1983) (isolated instances of opening a prisoner's legal mail outside of his presence does not state a cognizable claim); *see also Stevenson v. Koskey,* 877 F.2d 1435, 1441 (9th Cir. 1989) (prison guard's opening of inmate's legal mail outside of the inmate's presence was, at most, negligence, and did not reach the level of intent necessary for constitutional violation); *Brewer v. Wilkinson,* 3 F.3d 816, 825 (5th Cir. 1993); *Gardner v. Howard,* 109 F.3d 427, 431 (8th Cir. 1997) (isolated, single instance of opening incoming confidential legal mail does not support a constitutional claim); *Smith v. Maschner,* 899 F.2d 940, 944 (10th Cir. 1990) (isolated incident of opening inmate legal mail "without evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access the courts, does not give rise to a constitutional violation"); *Pearson v. Simms*, 345 F. Supp.2d 515, 519 (D. Md. 2003).

legal claim. The record clearly shows that the state court proceeding was not prejudiced. Smith was granted additional time and later submitted a timely reply to memorandum prior to the circuit court hearing. In addition, any alleged denial of access to research materials did not prejudice his federal case. Moreover, the docket in *Smith v. Mathis*, Civil Action No. PJM-08-3302 shows that: (1) Smith was able to file pleadings in this Court during the time in question; (2) Smith successfully plead his case on the motions; and (3) pro bono counsel has been appointed to represent him. No access-to-courts deprivation has been demonstrated.

An inmate may set out a conditions of confinement claim by alleging that he was deprived of a basic human need which was objectively sufficiently serious and that subjectively prison officials acted with a sufficiently culpable state of mind to expose him to those conditions. *See Strickler v. Waters*, 989 F. 2d 1375, 1379 (4th Cir. 1993). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *Strickler*, 989 F. 2d at 1380-81; *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. *See Helling v. McKinney*, 509 U.S. 25, 33-35 (1993) (exposure to environmental tobacco smoke). The key in determining whether prison conditions become cruel and unusual requires examination of the effect on the inmate. *See Rhodes v. Chapman*, 452 U.S. 337, 364 (1981). It is of note that the aforementioned burdens of proof remain the standard of review in the Supreme Court and this circuit.

Smith complains about the conditions of ASOA. According to the record, he was housed on ASOA for approximately twelve hours. Smith claims that he was denied hygiene items, toilet paper, and property during that time. Major Maycock affirms that such items are supplied to ASOA

inmates. Even if Smith's allegations be true, the Court finds that given the brevity of the ASOA assignment and Smith's failure to show serious injury or risk of harm, as demonstrated by the absence of sick-call encounter forms or other medical records, no Eighth Amendment violation has been demonstrated.[9]

V. Conclusion

Having found no genuine dispute of material fact justifying a trial on the merits in this case, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, construed as a motion for summary judgment, will be granted.[10] A separate Order shall be entered forthwith.[11]

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

---

[9] A liberty interest may, however, be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Segregation is not per se cruel and unusual punishment. *See Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir. 1984) (segregated protective custody); *Ross v. Reed*, 719 F.2d 689, 697 (4th Cir. 1983) (administrative segregation). Following the reasoning of the Supreme Court in *Sandin*, it appears that no liberty interest is implicated in placement on segregation. *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997); *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996). To the extent that Smith remained housed on administrative segregation for sixteen days, he has failed to establish Eighth or Fourteenth Amendment violations arising out of such confinement.

[10] The Court declines to take pendant jurisdiction over Smith's claims under the Articles of Maryland's Declaration of Rights.

[11] In light of the aforementioned rulings, Smith's requests for a hearing shall be denied.